IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| 3V SIGMA USA, INC., ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> GREGORY A. RICHARDSON, Director of the ) </br> Texas Service Center, United States Citizenship ) </br> and Immigration Services; ) </br> ) </br> KEN CUCCINELLI, Director of the United ) </br> States Citizenship and Immigration Services; ) </br> ) </br> CHAD WOLF, Acting Secretary of the United ) </br> States Department of Homeland Security; ) </br> ) </br> UNITED STATES CITIZENSHIP AND ) </br> IMMIGRATION SERVICES; and ) </br> ) </br> UNITED STATES DEPARTMENT OF ) </br> HOMELAND SECURITY; ) </br> ) </br> Defendants. ) </br> _____) | No. 2:20-cv-0807-DCN </br></br> **ORDER** |

This matter is before the court on plaintiff 3V Sigma USA, Inc.'s ("3V") motion for summary judgment, ECF No. 16, and defendants Gregory A. Richardson, Ken Cuccinelli, Chad Wolf, United States Citizenship and Immigration Services ("USCIS"), and United States Department of Homeland Security's (collectively, "defendants") motion for summary judgment, ECF No. 18. For the reasons set forth below, the court denies 3V's motion and grants defendants' motion.

## I. BACKGROUND

3V is a chemical manufacturing corporation located in Georgetown, South Carolina that produces "specialty chemicals" for the personal care industry, "as well as

1

chemicals used for paper and pulp, plastics, textiles, home care, coatings, polymerization additives, and concrete additives." ECF No. 1, Compl. ¶ 2. In early 2015, 3V engaged a consulting firm to implement a company-wide overhaul of its Enterprise Resource Planning software system ("ERP"), which required customizing an off-the-shelf computer program called JD Enterprise One ("JDE One") to match the ERP to the specific needs of 3V. Disappointed with the progress of the first consulting firm it engaged after a year of work, 3V determined that it "needed to look for global expertise," which it apparently found in a company called UBC Corporation ("UBC"). ECF No. 16 at 2. UBC and its employee Mykhailo Soltys ("Soltys"), a Ukrainian citizen, began working on 3V's ERP overhaul project in July 2016. "[S]o satisfied" with his work at UBC, 3V hired Soltys as a full-time employee in February 2017. Id. 3V supervises and directs Soltys's work in Ukraine from its manufacturing plant in Georgetown.

On September 12, 2019, 3V filed a petition to obtain an employment-based visa for Soltys, commonly referred to as an "L-1B visa." ECF No. 15, Admin. Record ("A.R.") 824–835. The Immigration and Naturalization Act ("INA") permits a multinational company to obtain an L-1B visa on behalf of a noncitizen employee who possesses "specialized knowledge" and whose work in the United States will require the use of that "specialized knowledge." 8 U.S.C.A. § 1101(a)(15)(L). In its petition, 3V described Soltys as "the lead ERP Manager" and stated that, if admitted, he "will have the primary responsibility to review, analyze, and create or modify [the] code to support" 3V's operations. A.R. 833. On September 19, 2019, defendant Gregory A. Richardson ("Richardson"), the Director of USCIS's Texas Service Center, issued a "Request for Evidence" ("RFE") informing 3V that its petition was deficient and that USCIS

2

"require[d] additional evidence" before it could grant Soltys an L-1B visa. A.R. 793–802. Relevant here, the RFE noted that 3V submitted insufficient evidence to demonstrate that Soltys possessed the requisite "specialized knowledge" and that his duties in the United States would require the use of "specialized knowledge." A.R. 799–800. The RFE also listed various examples of evidence that 3V could submit to satisfy the "specialized knowledge" requirement. A.R. 800 ("You may still submit evidence to satisfy this requirement. Evidence may include, [sic] but is not limited to . . . .").

On December 10, 2019, 3V responded to the RFE with over 700 pages of documents. A.R. 28–791. These documents include: a cover letter authored by 3V's counsel, A.R. 28–41; copies of caselaw and treatises of Delaware corporate law, A.R. 42–53; various corporate financial documents, many of which are printed in Italian, A.R. 54–224; 3V's corporate tax returns, A.R. 225–483; 3V's business purchase orders, A.R. 484–610; copies of international money transfers from 3V to Soltys, A.R. 611–633; a letter to USCIS from 3V's Chief Financial Officer ("CFO"), Kathryn Dismukes, A.R. 634–636; a list of 3V's American employees by name and position title, A.R. 637–640; a job description of what 3V contends is the closest related job to the proposed job Soltys would perform, A.R. 641–649; a police report regarding an incident of larceny against 3V in 2019, A.R. 650–666; documents cataloging the time and costs 3V spent on its first information technology consultant, A.R. 667-767; and an opinion letter from Larry Stokes, 3V's "expert in JD Edwards and customizations of JD Edwards," A.R. 768–791.

On December 26, 2019, Richardson issued a written denial of 3V's petition. A.R. 2–8. The denial stated that the supplemental evidence "fail[ed] to address the issues pointed out in the RFE." A.R. 4. The denial letter listed two "independent and

alternative" grounds for denial: (1) 3V failed to demonstrate that Soltys was "employed abroad in a position that . . . involved specialized knowledge" and (2) 3V failed to demonstrate that Soltys is "qualified to perform the intended services in the United States." A.R. 2, 5. The denial letter noted that while 3V submitted a large volume of documents in response to the RFE, the only evidence of Soltys's specialized knowledge were statements from 3V employees, uncorroborated by "documentary evidence." A.R. 7. The denial letter concluded, "Merely going on the record without supporting documentation is insufficient to establish your claim." A.R. 7. The denial letter further advised 3V that it may appeal the denial to the Administrative Appeals Office. A.R. 5. 3V declined to do so.

Instead, on February 21, 2020, 3V filed this action against defendants, seeking judicial review of USCIS's denial of its petition under the Administrative Procedures Act, 5 U.S.C. §§ 701, et seq. ("APA"). ECF No. 1, Compl. On December 11, 2020, 3V and defendants filed cross-motions for summary judgment. ECF Nos. 16, 18. On January 15, 2021, 3V and defendants filed responses, ECF Nos. 22, 23, and on January 22, 2021, defendants filed a reply, ECF No. 25. 3V did not file a reply, and the time to do so has now expired. The court held a hearing on the motions on February 25, 2021. As such, they are now ripe for the court's review.

## II. STANDARD

The Administrative Procedure Act ("APA") authorizes judicial review of "final agency action[s] for which there is no other adequate remedy[.]" 5 U.S.C. § 704. A district court must set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. at § 706(2)(A). To determine

whether an agency action is arbitrary or capricious, the court examines whether the agency considered relevant factors and whether the decision is the result of a clear error of agency judgment. Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009) (citing Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). The court's review of a final agency decision for clear error of judgment is limited to asking whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action," and determining whether there exists a "rational connection between the facts found and the choice made." Armah-El-Aziz v. Zanotti, 2015 WL 4394576, at *6 (E.D. Va. July 16, 2015) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43, (1983)). A court conducts such a review "based on the full administrative record" that was before the agency at the time of the decision. Citizens To Preserve Overton Park, 401 U.S. at 416.

Ultimately, the court's review of an agency decision is "a narrow one." Id. Courts unanimously recognize that "[r]eview under this standard is highly deferential, with a presumption in favor of finding the agency action valid." Ohio Valley, 556 F.3d at 192 (citing Natural Res. Def. Council, Inc. v. EPA, 16 F.3d 1395, 1400 (4th Cir. 1993)). Because "[a]gencies . . . have expertise and experience in administering their statutes that no court can properly ignore," Judulang v. Holder, 565 U.S. 42, 53 (2011), "[t]he court is not empowered to substitute its judgment for that of the agency," Ohio Valley, 556 F.3d at 192. Though narrow, a court's review should be nonetheless "searching and careful." Citizens To Preserve Overton Park, 401 U.S. at 416.

> Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and

>courts would abdicate their responsibility if they did not fully review such administrative decisions.

NLRB v. Brown, 380 U.S. 278, 291 (1965).

When cross motions for summary judgment are filed, the court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). Generally, summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). This familiar standard, however, "does not apply in cases where a district court is reviewing a final agency action under the APA 'because of the limited role of a court in reviewing the administrative record.'" Spelman v. McHugh, 65 F. Supp. 3d 40, 44 (D.D.C. 2014) (quoting Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89 (D.D.C. 2006)). In resolving a summary judgment motion in the context of APA review, the court "does not resolve factual questions, but instead determines 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" Armah-El-Aziz, 2015 WL 4394576, at *3 (quoting Friends of Back Bay v. U.S. Army Corps of Engineers, 2011 WL 12473234, at *4 (E.D. Va. Feb. 9, 2011)). Accordingly, summary judgment is a proper "mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Friends of Back Bay, 2011 WL 12473234, at *4 (quoting Sierra Club, 459 F. Supp. 2d at 89).

## III.  DISCUSSION

Before turning to the parties' arguments, the court outlines the governing law. The INA authorizes a multinational company to obtain a nonimmigrant L-IB visa on behalf of a noncitizen employee who "has been employed continuously for one year by" the company and seeks to enter the United States to continue working for the company "in a capacity that is managerial, executive, or involves specialized knowledge."  8 U.S.C. § 1101(a)(15)(L).  Although "specialized knowledge" is not a defined term, the INA provides some limited guidance on its meaning, stating that a noncitizen employee has "specialized knowledge" "if the alien has a special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company."  Id. § 1184(c)(2)(B).

The INA has promulgated regulations that further expound upon the specialized knowledge requirement, although the regulatory guidance "largely parrots, rather than interprets, the key statutory language."  Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec., 769 F.3d 1127, 1136 (D.C. Cir. 2014).

> Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

8 C.F.R. § 214.2(l)(1)(ii)(D).  The USCIS Adjudicator's Field Manual recognizes the regulations' failure to provide meaningful insight, noting, "Because the statute and regulations do not define the terms 'special' or 'advanced' we look to their common dictionary definitions, as well as the agency's practice and experience in this context."

7

AFM § 32.6(e).[1]  The Field Manual continues by applying those ordinary definitions to L-1B visa applicants:

> [An employee] seeking L-1B classification should, as a threshold matter, possess:
>
> - special knowledge, which is knowledge of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets that is <u>distinct or uncommon in comparison to that generally found in the particular industry</u>; or
>
> - advanced knowledge, which is knowledge of or expertise in the petitioning organization's specific processes and procedures that is <u>not commonly found in the relevant industry</u> and is greatly developed or further along in progress, complexity and understanding <u>than that generally found within the employer</u>.

<u>Id.</u> (emphasis added).

While the regulatory verbiage provides limited insight as to the definition of "specialized knowledge," the regulations do provide meaningful guidance with respect to the kind of evidence a company should present to satisfy the requirement.  Relevant here, an applicant must submit with its petition:

> (ii) Evidence that the alien will be employed in an executive, managerial, or specialized knowledge capacity, including a detailed description of the services to be performed.
>
> [ . . . ]

---

[1] The parties rely on the USCIS Adjudicator's Field Manual.  This manual is not an officially promulgated regulation of USCIS, nor is it codified in any official reporter of which the court is aware.  Nevertheless, the court finds it relevant here for two reasons.  First, the parties agree that the manual provides helpful guidance as to the specialized knowledge requirement and that USCIS relies on the manual in reaching final decisions.  Further, the manual, like the regulations, is not expansive in its interpretation of the authorizing statute; it relies instead on the ordinary definitions of the material terms.  As such, the court utilizes the guidance in the USCIS Adjudicator's Field Manual as an explanatory tool rather than binding law.  The full manual is available for viewing.  Adjudicator's Field Manual, USCIS, https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm32-external.pdf.

> (iv) Evidence that the alien's prior year of employment abroad was in a position that was managerial, executive, or involved specialized knowledge and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States; however, the work in the United States need not be the same work which the alien performed abroad.

Id. § 214.2(l)(3).

An L-1B visa applicant shoulders the burden of proving the eligibility of its noncitizen employee by a preponderance of the evidence, which requires producing sufficient evidence to demonstrate that its claim is "probably true."  8 U.S.C. § 1361; Matter of Chawathe, 25 I. & N. Dec. 369, 375 (AAO 2010).  Truth should be ascertained "not by the quantity of evidence alone but by its quality," Matter of E-M-, 20 I. & N. Dec. 77, 80 (BIA 1989), meaning that the USCIS must evaluate each piece of evidence "for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true," Chawathe, 25 I. & N. Dec. at 376.  While all evidence warrants evaluation, "statements or assertions by counsel are not evidence."  Matter of Obaigbena, 19 I. & N. Dec. 533, 538 n.2 (BIA 1988) (citing Matter of Ramirez-Sanchez, 17 I. & N. Dec. 503, 506 (BIA 1980)).  With this law firmly in mind, the court turns to the parties' arguments.

3V contends that USCIS's denial of its petition is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" because USCIS "relied on factors which Congress did not intended [sic] it to consider, entirely failed to consider important aspects of the case at hand, and offered explanations for its decision that runs

[sic] counter to the evidence for the agency[.]" ECF No. 16 at 10.[2] Defendants, meanwhile, argue that USCIS's denial is supported by the administrative record because 3V failed to "submit any documentary evidence or the like" to satisfy the specialized knowledge requirement, despite being given the opportunity to supplement its petition after the RFE pointed out its deficiencies and explained how they might be remedied. ECF No. 18-1 at 15. Because USCIS's explanation in its denial letter evinces a "rational connection" between the administrative record and the denial, the court agrees with defendants. Armah-El-Aziz, 2015 WL 4394576, at *6.

The court turns first to 3V's contention that USCIS considered factors beyond those authorized by Congress. To properly analyze this argument, the court must first address the parties' competing characterizations of the denial letter. Defendants aver that the denial letter outlines two evidentiary deficiencies that constitute alternative, albeit related, bases for the denial: (1) 3V failed to demonstrate that Soltys possesses specialized knowledge of 3V's process and procedures and (2) 3V failed to demonstrate that Soltys is qualified to perform the intended services in the United States. ECF No. 18-1 at 11–12. 3V, meanwhile, dissects the denial letter, highlighting eleven sentences within it and framing each as an "independent and alternative basis for denial." ECF No. 16 at 11. These various, ultra-specific grounds for denial, 3V contends, are rooted in "factors that Congress did not intend for [USCIS] to consider." Id. at 22. After

---

[2] 3V also contends that the denial of its petition is a final agency decision and thus immediately eligible for judicial review under the APA. See ECF No. 16 at 7 (citing 5 U.S.C. §§ 557(b), 704). Defendants seem to concede the issue, given that they fail to address it in both their response to 3V's summary judgment motion and in their own motion for summary judgment. In any event, the court agrees with 3V that USCIS's denial of its petition constitutes a "final agency action" under the APA and thus is cognizable upon appeal to this court.

reviewing the denial letter and the administrative record, the court finds defendants' characterization a more fair and accurate reading.

The body of the denial letter is divided into two sections, the former titled "Position Abroad" and the latter titled "Beneficiary Qualifications." A.R. 2–5. Each section begins by stating the issue on which 3V presented insufficient evidence. A.R. 2 ("The first issue to be discussed is whether the beneficiary has been employed abroad in a position that was managerial, executive, or involved special knowledge."); A.R. 5 ("The next issue to be discussed is whether you have established that the beneficiary is qualified to perform the intended services in the United States."). The body of each section details the perceived evidentiary shortcomings on the respective issue, including examples of evidence that 3V could have but failed to produce to make the requisite showing. The various explanations within each section, read within the letter's context, clearly do not constitute independent grounds for denial, as 3V contends; instead, the specific reasons in the body of the denial letter expound upon the two grounds for denial reflected in the section headings, as defendants contend. As just one example, the denial states: "[Y]ou did not submit training records and personnel records in support of the list of U.S. employees you submitted in your response." A.R. 4. 3V characterizes that statement as an "independent basis" for denial. Read in context, however, it is clear that USCIS intended that sentence to reflect just one example of the type of evidence 3V failed to submit to demonstrate Soltys's specialized knowledge.

As such, it seems clear to the court that the specific explanations USCIS provided in the denial letter do not themselves constitute "independent and alternative" reasons for denial but instead provide further support for the two "independent and alternative"

11

grounds for denial reflected in the denial letter's headings: (1) 3V failed to demonstrate that Soltys possessed specialized knowledge of 3V's process and procedures and (2) 3V failed to demonstrate that Soltys is qualified to perform the intended services in the United States. The regulations authorize USCIS to consider evidence on these issues.[3] See 8 C.F.R. § 214.2(l)(3)(ii)–(iv). As such, the court rejects 3V's argument that USCIS considered factors beyond those authorized by Congress.

If the court finds a rational connection between the evidentiary record and either ground for USCIS's denial, it cannot disturb the decision. Braintree Elec. Light Dep't v. F.E.R.C., 667 F.3d 1284, 1293 n.8 (D.C. Cir. 2012) ("When an agency offers multiple grounds for a decision, we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.")). The grounds for denial here share a common theme. Defendants explain that 3V "failed to submit evidence [that] Soltys possess knowledge 'which is either distinct or more complex than that held by other individuals holding similar positions within [3V's] organization or industry at large,'" and instead "only offered its own statements and statements by its [c]ounsel asserting conclusively that Soltys has specialized knowledge." ECF No. 18-1 at 13 (quoting A.R. 5). 3V points to several places in the administrative record to demonstrate that it presented sufficient evidence of Soltys's specialized knowledge. Defendants argue that the evidence on

---

[3] 3V's lawsuit challenges the agency decision under § 706(2)(A) of the APA. It does not challenge the regulations as impermissible interpretations of the INA. Even if 3V did challenge the regulations themselves, the court would find that them to be permissible interpretations of the authorizing statute. See Fogo De Chao, 769 F.3d at 1137 (noting that the regulations defining "specialized knowledge are "entitled to respect . . . to the extent [they have] the power to persuade").

which 3V relies is either unsupported testimonial evidence or documentary evidence that fails to demonstrate that Soltys's knowledge is particularly specialized or uniquely advanced. Neither of which, defendants contend, satisfy the specialized knowledge requirement. The court addresses each piece of evidence on which 3V relies in turn.

First, 3V relies upon a letter authored by its Human Resources Manager, Brandon McClellan (the "McClellan Letter"), which it contends includes a detailed description of Soltys's job duties during his employment by UBC, despite the denial letter's contention that 3V "did not submit a detailed duty description for [Soltys]'s position." A.R. 4. 3V fails to point the court to a specific portion of the McClellan Letter in support of its position; therefore, the court has selected the portion it deems most relevant to 3V's argument. The McClellan Letter states:

> Mr. Soltys was employed in Ukraine by UBC [ ], a leading provider of highly efficient solutions that allow creating innovative technology strategy, operation strategy or business models that increase overall productivity of a client's business. UBC's key mission is to meet and exceed client's expectations through implementation of innovative IT-solutions in their activity and further the significant rise of its efficiency. UBC[ ]'s European operation provide a wide array of services to third-party companies such as 3V [ ] including software upgrades and migrations, localization services, integrations, and customizations.
>
> While working at UBC [ ], Mr. Soltys was assigned to work on a client project for 3V [ ] that included complex solutions for their [sic] implementation of JDE E1 Sales Order Allocation Module [ ]. After working with 3V [ ] on this project, 3V [ ] offered direct employment to Mr. Soltys as its employee based in Ukraine, and [sic] reporting directly to 3V [ ]'s offices in the United States.

A.R. 841.

Defendants argue that USCIS did consider the McClellan Letter and deemed it insufficient to demonstrate that Soltys possesses specialized knowledge. As defendants explain, the denial rests on 3V's "failure to prove the assertions made by McClellan in his

13

letter by submitting documentary evidence" that might demonstrate that Soltys possesses specialized knowledge. ECF No. 22 at 9. For example, defendants note, 3V failed to submit evidence of "the software code work Soltys did and documentation that shows how and when Soltys learned 3V's processes and procedures." Id. As such, USCIS found that the McClellan Letter's bald statements were insufficient because they stand uncorroborated by documentary evidence of Soltys's specialized knowledge.

3V also supplemented its application with a letter from Kathryn Dismukes, Chief Financial Officer of 3V (the "Dismukes Letter"). The crux of the Dismukes Letter is that Soltys's intimate knowledge of 3V's processes and procedures, combined with his expertise in JDE One modification, makes him uniquely suited for his "specialized knowledge" position with 3V. Dismukes wrote that "JDE customization requires extensive knowledge of every aspect of our business to be able to customize the software to the needs of our company" and that Soltys's "knowledge of our company processes, systems design, custom solutions, and maintenance procedures are critical and would be terribly expensive and potentially impossible to replicate given our aggressive time constraints." A.R. 635. The Dismukes Letter, UCIS found, suffers from the same fatal flaw as the McClellan Letter. Defendants explain that 3V failed to "back up Dismukes' claim" with documentary evidence, leaving USCIS with only the uncorroborated statements of "its own employees." ECF No. 22 at 10.

The court agrees with defendants with respect to the McClellan and Dismukes Letters. The statements of McClellan and Dismukes, in themselves, are not particularly strong indicators that Soltys possesses specialized knowledge. Without corroborating

evidence,[4] the McClellan and Dismukes Letters fail to convincingly demonstrate that Soltys possesses knowledge of 3V's "specific processes and procedures that is not commonly found in the relevant industry and is greatly developed or further along in progress, complexity and understanding than that generally found within the employer." AFM § 32.6(e). It is rational for an agency to conclude that a petitioner has not demonstrated the "probabl[e] truth" of a fact when it fails to produce documentary evidence of the same and instead relies on unsupported assertions of its employees. Chawathe, 25 I. & N. Dec. at 375.

Moreover, in the RFE, Richardson alerted 3V to the lack of documentary evidence supporting the McClellan Letter. The RFE stated:

> The evidence you submitted is insufficient. Although you described the beneficiary's experience and background, you did not submit a detailed duty description for the beneficiary's position. . . . [A] review of the duties you listed does not provide sufficient details and insight to the beneficiary's day-to-day responsibilities. In fact, the duties are broad and only reflect the beneficiary's performance of routine duties commonly performed by professionals in the industry. A review of the duties as listed fails to indicate that the performance of such duties requires the use of specialized knowledge. . . . Therefore, please submit a detailed duty description for the beneficiary to address the issues as discussed. In addition, <u>please submit documentary evidence to demonstrate the beneficiary's performance of the claimed duties in specialized knowledge capacity</u>.

A.R. 798 (emphasis in original). It is evident that the USCIS indeed considered the McClellan Letter, found it insufficient based on a lack of corroborating evidence, and alerted 3V to the deficiencies. Still, 3V did not produce corroborating documentary

---

[4] 3V argues that the McClellan and Dismukes Letters, in additional to constituting sufficient evidence in themselves, also are supported by corroborating documentary evidence. The court discusses that allegedly corroborative evidence below.

evidence. As such, the court finds that the McClellan and Dismukes Letters, in themselves, do not render the denial arbitrary, capricious, or an abuse of discretion.

Additionally, 3V submitted a letter from Larry Stocks, 3V's purported "expert in JD Edwards and customizations of JD Edwards" (the "Stocks Letter"). A.R. 768–791. Stocks wrote that "Soltys has developed an understanding of the JDE development and practice in order to be able to perform [the] modifications" 3V requires and "is a solid JDE developer and very knowledgeable in the development area." A.R. 769; 790. The problem with the Stocks Letter is that it demonstrates that Soltys is a "solid developer" but fails to show that he possesses knowledge of 3V's processes or procedures "that is distinct or uncommon in comparison to that generally found in the particular industry." AFM § 32.6(e). In other words, the Stocks Letter evinces that Soltys has knowledge of JDE One programming and customization but does not indicate that the knowledge is particularly specialized, advanced, or reflective of a unique knowledge of 3V's processes and procedures. Therefore, the court finds rational USCIS's conclusion that the Stocks Letter failed to demonstrate Soltys's specialized knowledge.[5]

Next, the court turns to the documentary evidence that 3V submitted to USCIS in its petition and now relies upon for its motion. First, 3V points to financial records that catalogue the cost 3V incurred in retaining the consulting firm that failed to implement

---

[5] 3V also relies, in part, on a letter written by its counsel and submitted with its application. 3V concedes that statements of an attorney are not evidence, see Obaigbena, 19 I. & N. Dec. at 538 n.2, but nevertheless contends that the USCIS failed to consider its counsel's letter as a "roadmap." ECF No. 23 at 2. The APA authorizes the court to examine the administrative record and the basis for the agency decision to determine whether a rational connection exists between the two. Whether an agency utilized a "roadmap" to guide its examination of the evidence is simply beyond the court's review. Therefore, the court declines to entertain 3V's argument.

3V's ERP overhaul. A.R. 634. 3V argues that these records show that Soltys's knowledge of 3V's processes and procedures "would be terribly expensive and potentially impossible to replicate," i.e., is "specialized." ECF No. 16 at 17. The court disagrees. 3V's financial records show that it incurred one million dollars in retaining a consulting firm that was unsuccessful in performing the ERP overhaul to 3V's satisfaction. After this unsuccessful attempt, 3V engaged UBC, which did successfully implement the new JDE One system and overhaul 3V's ERP. The fact that the first firm 3V engaged failed to accomplish a goal does not mean that the goal requires knowledge that could not be found in the industry at large. As defendants put it, it merely shows that the first company "was a bad choice." ECF No. 22 at 11. Moreover, 3V's ability to successfully engage a firm shortly thereafter—UBC—who accomplished its goal demonstrates that the goal can in fact be accomplished by other firms in the industry, i.e., without the need for knowledge that could not be found in the industry at large. The denial letter states as much:

> The evidence you submitted, showing that the contracted service to implement this product in your organizational process was not successful, is not sufficient to demonstrate that the knowledge is inclusive to your entity or that the specialized knowledge possessed by the beneficiary is that of the petitioning organization's product, service, research, equipment, and techniques.

A.R. 5. The court finds this a rational conclusion based on the record.

3V also included in its application dozens of pages of software code as examples of Soltys's work. A.R. 921–962. In the RFE, Richardson stated:

> [Y]ou submitted evidence . . . which according to [the McClellan Letter] is an "example of specific software code that has been developed by Mr. Soltys to implement the JDE [One] integration for our company." However, a review of the evidence reveals that the program used by [Soltys] is proprietary to J.D. Edwards World Source Company. Further, the name of

17

> [the] author and programmer on the document is shown as "Sanjay." It further appears that the document was created by this individual and merely used by [Soltys] in the course of performance of his routine duties. As such, the evidence you submitted not only does not support your assertions, but it also does contradict your statement that such software was developed by [Soltys]. Further, the evidence fails to demonstrate that developing these programs would qualify [Soltys's] performance as specialized knowledge capacity. Therefore, the evidence does not establish that [Soltys]'s knowledge is uncommon within your organization or industry at large, nor it demonstrates [sic] that [Soltys] obtained specialized or advanced knowledge qualifying him to perform the intended services in the U.S.

A.R. 24. In other words, the RFE pointed out that the computer code 3V submitted with its initial petition as evidence of Soltys's specialized knowledge was actually standard JDE One code that was not authored by Soltys. Despite the RFE alerting 3V to this specific deficiency and requesting additional evidence of software code authored by Soltys, 3V failed to supplement its petition with additional software code or any other documentary evidence of Soltys's work. As such, the court finds that the USCIS had a rational basis for rejecting this evidence.

3V has failed to identify any other evidence in the record which constitutes demonstrative or documentary evidence that Soltys possesses a special knowledge of 3V's processes and procedures or an advanced knowledge not commonly found in the industry at large. If the court took up 3V's petition in the first instance, it might very well find that 3V's claims are "probably true." As the court has detailed, 3V submitted the sworn statements of its employees who testified to Soltys's advanced knowledge of JDE One implementation and his special knowledge of 3V's processes and procedures, which together, 3V argues, constitute the "specialized knowledge" necessary to qualify Soltys for an L-1B visa. But the court does not review 3V's petition in the first instance. The Congressionally authorized review the court undertakes pursuant to the APA

acknowledges the expertise of the relevant agency and thus affords great deference to agency decisions. Accordingly, the law would permit the court to overturn USCIS's denial of 3V's petition only in the absence of a rational connection between the decision and the administrative record. Unfortunately for 3V, a rational connection is apparent here.

For one, 3V's petition was bereft of any documentary evidence showing that Soltys possesses specialized knowledge, i.e., "advanced knowledge" of 3V's "specific processes and procedures that is not commonly found in the relevant industry" and "further along in progress, complexity and understanding than that generally found within the employer." AFM § 32.6(e). Courts have found a similar lack of documentary evidence a sufficient ground for denial of a L-1B petition. See Impetus Techs., Inc. v. Baran, 440 F. Supp. 3d 1095, 1102 (C.D. Cal. 2020) (affirming USCIS's denial where "no documentary evidence was presented to show that the specialized knowledge specific to Plaintiff was necessary to perform the work."). Further, the unsupported assertions of 3V's employees are not enough to demonstrate that the denial is arbitrary, capricious, or constitutes an abuse of discretion. Uncorroborated sworn testimony is nonetheless uncorroborated. Finally, and perhaps most pertinent, Richardson alerted 3V to the evidentiary shortcomings of its initial petition, provided examples of the type of evidence 3V could submit to remedy those deficiencies, and, inexplicably, 3V failed to do so. Thus, 3V's failure to comply with the RFE provides further rational grounds for denial. See id. ("Plaintiff wholly failed to address this element in the response to the RFE."). Because the court draws a rational connection between the administrative record and USCIS's denial of 3V's petition, it must affirm the agency decision. Accordingly, the

court grants summary judgment in favor of defendants and denies the same with respect to 3V.

## IV. CONCLUSION

For the foregoing reasons the court **DENIES** 3V's motion and **GRANTS** defendants' motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 3, 2021**
**Charleston, South Carolina**